Good morning, your honors. May it please the court, my name is James Hunt Miller. I'm representing the appellant here. This case is about a young woman who medically had fibromyalgia, but legally did not, according to the findings of the AOJ here in the position of the government. The case issues are four, and they're mainly about rejection of various evidence and also about omission to address evidence. I would like to note that the standard of review is very important in this case. Standard of review includes the whole record. In this case, the whole record includes the statement and diagnosis and opinion of a treating doctor that the claimant had fibromyalgia and it was disabling. The finding of the AOJ was that fibromyalgia didn't even exist or was not established here. There was no evidence to even establish that it existed. That conclusion, as appellant points out in the first argument, is cannot be considered cannot be deemed to be supported by substantial evidence in the whole record. There's just no way that that could not be affirmed because the treating physician's opinion clearly showed that fibromyalgia was present. What was the basis of the AOJ's finding that, right? There was the claimant did not suffer from fibromyalgia. And that was the AOJ found? Yes. The AOJ found that because the treating doctor had not identified specific tender points, which is the American College is sort of a protocol, right? Rheumatological criteria involves tender points. And the AOJ found that because they were not specifically identified, he couldn't count or he couldn't confirm the doctor's diagnostic or reporting techniques and therefore could not confirm the fibromyalgia. And what's wrong with that finding? Indeed, the American College of Rheumatology says you've got to have these X number of trigger points. Right. And the doctor here said she did meet the ACR criteria, American College of Rheumatology criteria, and said that in his clinic notes pointed out widespread tender points, but did not specify any particular tender points. In diagrams, it appears that some tender points were specified by dots, but he did not list or specify which tender points were present. He just said enough were present to meet the criteria. So, Judge Tichina, I think that the fibromyalgia findings are the key to this case. Not the key to all the issues, but they are the key to this case. And I noted that you wrote an opinion in 2001, Rollins, or some people call it Rollins, where you suggested at least that objectivity might be an issue in diagnosing fibromyalgia, and Judge Ferguson dissented, saying that this is not an objectively confirmable disease. And then since then, in 2004, Beneke came out with a different, completely different panel, confirmed that you can't expect to get objective evidence for fibromyalgia cases and you cannot rule out fibromyalgia based on lack of objective evidence. I mean, you can't say it's not there based on lack of objective evidence. In this case, it appears to me that the ALJ simply tried to find a new way to get rid of the fibromyalgia considerations by saying that the doctor didn't specify exact tender points. And then even though that may be a valid criticism, the judge used that in order to find that fibromyalgia didn't even exist, which to me is just a technique that was rejected in Beneke, insisting upon objective evidence or insisting upon specific evidence for fibromyalgia that is not to be found in such cases. So, of course, if you're correct on that point, then obviously the RFC determination is also erroneous, right? Yes. Because it depends on the absence of fibromyalgia, doesn't it? Yes, it does. All right. I have two minor items that I feel I must address, however. One is a mistaken cite in my briefs. In both of my briefs, I have, in regards to the appellant's husband who filled out a form, I cited pages 146, 147, and I was one page off. It should have been 145, 146. This is where the appellant's husband describes that she has problems with self-care and problems around the house, doing cleaning activities, and needs help with those things. I just wanted to clear that up. That's on reply brief page 7 and in the opening brief on page 17. Page 17? Page 17 in the opening brief, yes. That lay evidence was not addressed by the ALJ at all, and that's major error according to the panels of this Court. And I just needed to correct that cite on there. And that goes to the finding about claimant's lack of credibility. Then one other minor item. The government's first argument here contends that there's a very narrow time period of only a few months in which the claimant has to prove she became disabled. Even though that's legally correct, none of those findings of that nature were made by the ALJ. Instead, the ALJ considered all the evidence that was submitted from all different time periods, from both before and after the period that was legally under consideration and implicitly reopened the older period, and also considered the later evidence from beyond her date last insured. So I think that time period argument, number one argument in the government's brief, is not really relevant here. I would like to save my time unless there are questions. No? That's fine. All right. Then we'll hear from the Commissioner. Good morning, Your Honors. Mary Beth O'Connor representing Michael J. Askew, Commissioner of Central Security. I, too, agree that the focus here is on the diagnosis of fibromyalgia and the fact that it is not supported in the record by the criteria established by the American College of Rheumatology. As this Court has previously recognized, the diagnostic criteria is that 11 of 18 specified tender points exist in order to make such a diagnosis. The treatment records here include no such indication that that test was satisfied. Well, why? Because it doesn't specify where these trigger points are? Is that why? It doesn't specify. It says multiple tender points. It never says where they are. It never says how many they are. Under the statute, under our rulings, we need specific signs and diagnostic technique confirmation in order to find that a medically determinable impairment exists. As this Court said in Yugalov, no matter how genuine claimant's complaints might seem, where there are no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment, claimant must be found not disabled at step two. And that is exactly what happened here. The medical expert supported the ALJ, pointed out that the criteria, the relevant and required criteria as to the tender points had not been established, and the ALJ properly made that determination. In regard to the residual functional capacity, there is a consultative examination of Dr. Kostouris. Plaintiff complained to him of pain in her back and her neck and her shoulders, and he made a limitation analysis, and the ALJ's residual functional capacity is consistent with that. He considered all of her capabilities and all of her limitations. As to the credibility, as with the prior case, the ALJ properly pointed out the many inconsistencies in claimant's statements. On one hand, she said that she was required to lie down for four days at a time, was nauseous constantly, and yet at the same time she's taking her children to school, she's performing household chores, et cetera. There were many inconsistencies in her testimony undermining her credibility. As to the husband's statement, the evidence wasn't probative. It was very general. It was very vague. It said a few things similar to what claimant had said, but it too was not supported by the record, not supported by the medical evidence. The only other complaint that claimant makes is that the vocational expert testimony was incorrect because the residual functional capacity finding indicated that she could not perform stooping. However, the jobs identified, her past relevant work, the Dictionary of Occupational Titles makes clear that stooping is not required, and the vocational expert specifically testified that none of those jobs required stooping. For all these reasons, unless you have any questions, the Commissioner's findings were supported by substantial evidence in all respects and should be affirmed. Well, what bothers me in this case is where your opponent started out. The plaintiff's physician, I mean, he did say there were, I forgot his language, but a number or multiple, but, you know, a lot of trigger points, right? Multiple tenor points and two. But he didn't, you know, say exactly where they were, and he didn't specify the number. Correct. But he did come to the medical opinion that the patient suffered from fibromyalgia, right? He diagnosed her with fibromyalgia. Are you saying that under the protocol of the American College, there has to be X number? The standard, as previously recognized by this court, is 11 out of 18 specified trigger points. That is the diagnostic criteria for fibromyalgia, and the record doesn't support it. The treating physician only said multiple tenor points two and a half years after. But if he says multiple and his ultimate opinion is, you know, patient has fibromyalgia, can't you infer that there must be at least 11, otherwise he wouldn't have come to that conclusion? The ALJ has to go by the record evidence. The ALJ has to evaluate the treating opinion and look at the evidence underlying it. In this case, the evidence did not support that diagnosis. In addition, the consultative examiner, the state agency physicians, the medical expert, none of them made that diagnosis. So to say that the fact that a doctor diagnoses an impairment or a condition, but that the record is without the requisite diagnostic support under those conditions as this Court has previously recognized, a step two determination is appropriate and necessary. I understand, Your Honor. Do you have any questions? No, sir. Thank you very much. Thank you. Rebuttal. Mr. Miller, what's your response to the government's basic argument that, well, in effect, this diagnosis is insufficient in light of, you know, the I forgot, was it Dr. Miner's testimony and, you know, the case law and the ALJ's conclusion? The appellant's answer to that is that the ALJ may well have been doing legal and logical things in critiquing either the diagnostic technique or the reporting technique, but to go from there, where he has a question about that diagnostic technique or reporting technique, to fibromyalgia doesn't even exist in this case. It's just not logical or fair and not supported by substantial evidence in the whole record because the same doctor that he criticizes said she does indeed have fibromyalgia, according to the same criteria that are required to be applied by the college. You say the same doctor? Who are you referring to? The treating doctor. Your Honor. Yes. But not the doctor. Dr. Miner didn't say that, though. The other doctors did not say fibromyalgia was not present, even though they did not include it in their diagnoses. Well, he did say it doesn't meet the criteria for fibromyalgia. In testimony, the ALJ kind of pushed Dr. Miner into testifying about that that way. He said if there's nothing objective, well then. See, that goes to that main issue about fibromyalgia. Is there anything objective to report in a fibromyalgia case? And he may have been addressing that when he testified with the ALJ leading him to address objectivity. If you are correct that the administrative law judge improperly discredited Dr. Dixit, is that his name? Yes. If you have a fibromyalgic diagnosis and did not properly consider your client's subjective pain report, what else is lacking in the record that would not lead us to sustain the ALJ's ultimate findings? I mean, do you not have reports of other doctors, both treating and consulting, as well as a medical expert? I guess what I'm saying is if you might find some fault with what the ALJ did on the surface, when you get the whole package together, it's really not going to make any difference because there is other evidence in the record. No, I understand. I think I understand what you're saying. You don't have to buy into my language. When the judge formulated the RFC finding, that included a non-credibility finding where he discounted many of the complaints of the applicant, claimant, and that was in part based on his finding that no fibromyalgia was present. So that affected the credibility finding, too, and that, again, affected the RFC finding. So I think that key fibromyalgia finding would affect the other findings as well and would affect the RFC finding and would require revision of the credibility finding as well. All right. Anything else? That's all. Thank you. All right. Thank you for the argument. We thank both counsel for your argument. And this case is submitted for decision. The last case on the record is also submitted on the brief. So we are in adjournment for the day and for the week. Thank you.
judges: Stafford, Tashima, Thomas